23.073 and 21.2171. Okay. Please proceed. Thank you. Good morning, Your Honors. I please the Court. My name is Adam Shaw. I'm Boyd Sheldon Flexner and I represent the appellant Michael Mader in this action. Thank you. This Fair Credit Reporting Act appeal turns on whether the underlying student loan debt was discharged in bankruptcy. That's the only issue that the district court addressed below and we submit that's the only issue that this court should deal with today. Experian believes that it can prove beyond doubt that the loan was made under a program that was funded by federal funds merely by citing to a declaration that parroted language from a promissory note, language that even the district court said was ineffectual. We say they can't because we submitted evidence that there was no such thing as a federally funded program and that the program itself was wholly private. And your view is that even though your client, Mr. Mader, signed the note acknowledging the dischargeability, that's not enough? Correct, Your Honor, for a couple reasons. One, this court said last year in the Hohmaden case that discharges to student loans need to be narrowly construed under the statute and that it's the party invoking the exception to discharge that has to prove it. But also because that language in the promissory note, if you look at it, and I urge the court to look at it, literally parrots the statute which says I agree that this loan is non-dischargeable. And it's a long history. Well, I understand that this loan is an educational loan, et cetera, and it's not dischargeable. Correct. But at the end, it says not dischargeable under the bankruptcy code. And we submitted to the court, which the lower court agreed, and we submitted to this court, you can't do that. You can't have a pre-petition waiver of bankruptcy. In other words, you and I can't agree that if I lend you money, we're going to agree not to apply the bankruptcy code to it. And that's what that language does. It is literally a pre-petition waiver of bankruptcy, which is against public policy. I think all the cases say that if that were allowed, every creditor would just put that into a note. And you have to remember here, Mr. Mader is not a sophisticated party here. Navient, the lender, is a sophisticated party here. He wouldn't know in any way how to even check that. He paid on the loan after bankruptcy, right? That's true. But that doesn't affect you. Whether the loan was discharged or not occurs at the date of discharge from the bankruptcy court. Yeah. The fact that he paid afterwards, this experience didn't look at that at all. That had nothing, no effect on their decision at the moment of time of discharge. So it's a historic – isn't it a historical question? Was the loan discharged by the bankruptcy court? Absolutely. But yet, the way it's being litigated is a statutory interpretation question before this district court in a Fair Credit Act case asking, essentially, should the loan have been discharged under the bankruptcy act? That's true. That's partly because of the defense that they raised. I mean, when we came into this case, we believed that this loan was discharged at that time. Why not go to the bankruptcy court and ask for clarity? We suggested that to the district court judge, and she didn't take that up. But also, this issue that they raised was raised for the very first time in summary judgment by submitting a declaration from a non-party. It was never even hinted at at any point in time in this case up until this moment. There's a motion to dismiss in this case. You can see the focus in the motion to dismiss was on whether their procedures were reasonable. And we submitted – what happens here is Experian treats every single student loan, regardless of its provenance, as discharged – as not discharged. Every single one of them. And that's not the law. This Court said very clearly last year in the Maiden case that private loans can be discharged. There's very specific exceptions to that discharge. I'd submit to this Court that there's two recent cases that I would commend you to look at that are for bankruptcy courts, but I think I shut the door on this. One is the In re Terran case out of the Northern District of California, and the other is the Mazloom case, which we cited in our 28-J letter, which is from the Bankruptcy Court of the Northern District of New York, where this exact issue was brought to the Court. It was Nabi in itself who was the party defendant, and it was this exact loan program in the Mazloom case, the Excel grad program. And they came to the Court and asked for summary judgment that their loan was federally funded. And they were put to their proof, and they came up with none. Nabi in itself came up with no proof that this loan was part – this Excel loan program had a single dollar of federal funds in it. And I would – you know, that was when Nabi had its own choice. And I would also ask this Court, when you're defining the word program, it can't be this amorphous – it can't be this amorphous concept. There are thousands of pages of statutes and regulations that define federal programs. I mean, right now, you know, the President is trying to deal with federal loans. Do we really think that the federal government has some hidden program somewhere that's not a word, not a single word about, that would put it within the definition of a federal program that would grant it relief and dischargeability in the bankruptcy court? So you would say it's the obligation of the credit reporting agency to make the legal determination about whether something was discharged and whether it's a program and to consider all the factors that might go into making that determination. Is that right? We submit that they have to have some procedure in place for that. But we also say it's not a – it's not a legal determination. It's a – what's reported here is the discharge of – whether the debt is discharged, but also facts about the loan itself. But isn't it a legal determination whether the program is one that allows dischargeability or not? Well, it's legal only in the sense of whether the court discharged it at the discharge moment. They cite a lot of cases that say we didn't – That's a factual question. But you're asking it to be assessed by making an application of law to fact, a legal analysis. That's true, but the defense is that they don't have to – you shouldn't have the credit reporting agency have to look at the underlying loan and the validity of the loan to make those determinations. And this doesn't go to the validity of the loan, right? The loan existed at one point in time. Nobody doubts that. We're saying what is the effect of the discharge order of a court? I would submit that Your Honor's decision last year in the Shimone v. Equifax case where you had to determine – a court said that a so-ordered stipulation of a debt was settled. That's what was put in the court docket. And then the credit reporting agency reported it as satisfied. The debtor complained that it should be reported as vacated. And this court went through the analysis. Well, they relied directly on the court docket there, as I recall in Shimone, as characterizing it as a statute to understand what was dischargeable or not dischargeable or whether a loan was filled within a program or not. Or perhaps I'm not recalling. That's true, Your Honor. But in this case, there was a court order. There was a discharge order. And the discharge order from the bankruptcy court says all debts that this debtor had are discharged. No, all dischargeable debts are discharged, which is why we're here, right? True. But if this were not a student loan debt, if this were just a regular commercial credit card debt, they have procedures for dealing with that. If the bankruptcy court issues a discharge, they automatically treat those debts that – those credit card debts that predated the bankruptcy discharge as discharged. That's the way they do it, automatically, through their procedures. Can I ask you a question? Sure. What is it exactly that you claim is inaccurate? It looks – Tell me everything that you claim is inaccurate. Sure. On the credit report – and I can get you the page numbers in a moment – but on the credit report, it lists the debt as past due, which is a denomination that the debt is still currently due. Is that factual or legal inaccuracy? I would say it's factual. But it also lists specific dollar amounts, $28,000, I think, charged off, which is a fact. And I think it's $9,000-something as past due. All of those things – you remember – You say that those are all inaccurate. I say that those are all inaccurate. And the way to get there is to construe the meaning of any program and take the facts of Navient's program here and assess whether Navient's program here fits or doesn't fit under the any program language. Right? I mean, that's what we have to do. That's what the mode of analysis of the district court judge is. That's what you're asking us to do. Correct. But again, once there's a court – yes, Your Honor – but once there's a court order that discharges the debt, granted, it says which ones are discharged. But this is what I'm trying to ferret out exactly not only what the inaccuracies are that you allege but the nature of the inaccuracies. So here I think the question is are we talking about factual inaccuracies or inaccuracies that have a legal overlay or an overlay of a legal analysis? And you ask us to go back to dischargeability principles and so on. And that, to me – but perhaps I'm completely mistaken – has an air about it of legal analysis. And so I'm trying to decouple what is it that you say would not require – what inaccuracies don't require any legal analysis by anybody and what inaccuracies, pledged inaccuracies, require some level of legal analysis by Experian, by us, by you, by all of us. I don't think – I think when you're interpreting a court order and the impact of a court order, in this case a discharge order, there's some portion of it which is legal. And you can't really divorce that completely from the factual. But it happens all the time. Experian does that all the time on all kinds of debts. And we list the litany of types of debts that they do that to. But – So let me follow up. I've got maybe another set of questions. Why isn't the statute here that you're operating under, why isn't it really more tightly focused on factual inaccuracies as opposed to inaccuracies that involve some element of legal analysis? Because – Well – I'm not going to say what I was about to say. But credit reporting agencies are – may be equipped to engage in legal analysis, but I could see Congress saying or concluding that it's better for – it's a better system to have credit rating agencies just look at factual issues and report those. And if the claim is a factual inaccuracy, then you've got a claim. If the claim is that this is legally inaccurate on the part of the credit rating agency, then you don't have a claim. Why can't we separate it out that way? I don't think the statute allows – what the credit reporting agencies are doing is impacting people's economic lives. And they're doing it by interpreting some legal issues like dischargeability. They do it all the time. And the Fair Credit Reporting Act – and this Court's defined what does inaccuracy mean under the Fair Credit Reporting Act. And it's said anything on the credit report that – Where have we done that where we've said it's more than a factual inaccuracy? Well, it's the interpretation of the credit report that conveys the information, whether it's factual or not, conveyed in the credit report. And here we have more than just included in bankruptcy or not. We have – we also have charged off past due and specific dollar amounts. And I would suggest to the Court that the Loesch case at the Seventh Circuit dealt exactly with this issue where – I believe it was Experian in that case, if I could be wrong – where they said we're just reporting historical information about this debt. And, you know, you're asking us to interpret something that's legal. And the Loesch Court said no, the debt still exists. Bankruptcy doesn't get rid of the debt. It just gets rid of the intersonim obligation on the debt. And the information you're conveying about that debt is inaccurate. And I think bankruptcy courts across the country – and we've cited some other cases – that clearly say if you're reporting a debt that's discharged as still due and owing, that that is – even though it has an element of it that's legal, that is a factual inaccuracy. That's the way the courts interpret that, because you're conveying to the credit markets factual information about this debt, that this is a debt or still owes the money. Can I ask, just to clarify something you said to me earlier? Because it seems to me the natural thing to do here is you go to the bankruptcy court and you get clarification as to whether the bankruptcy court deems this discharged or not. And there's a good appeal. And then if you want to bring a fair credit – and that's Navient that's responding to that. And it's Navient's burden to establish the non-dischargeability. And you said you suggested that to the district court, and the district court didn't agree? What does that mean? I think at some point in conversations with the court that suggestion was made, isn't this really something that the bankruptcy court should decide? And I think in conversations it was brought up, well, you could certainly – the court has the power to do that, to send it as kind of like a certified question to the court. I mean, you don't deem it part of the plaintiff's burden in a fair credit reporting act case to establish an accuracy to have a clear order from the bankruptcy court? Well, we think that the – we think certainly a district court as kind of the broader court that above the bankruptcy court, as part of the bankruptcy court, is certainly a jurisdiction to make that determination itself. It's not something that has to go to the bankruptcy court, but it's certainly something that could. We don't think it has to here. And, in fact, that's why we cited to the, you know, the Mazloom and the Tehran cases, because there was nabbing in a bankruptcy court with this very loan at issue. And all of those bankruptcy courts have said that you cannot prove non-dischargeability merely by saying that it's part of a program. You have to come forward with some evidence. Well, you preserved some time for rebuttal, so we'll hear from your friend on the floor. Okay. May it please the Court? Mayor Fetter for Experian. I'd like to make two points today. The first is that Judge Schofield was correct in her determination that the only evidence in the summary judgment record, if she had to make the determination as to whether or not this was a non-dischargeable loan. My second point goes to what much of the discussion here today has been. On the first point, she, I think, doesn't address the perspectives. Well, yeah. I mean, the — That still assumes this is the right mode of analysis. Yeah. But assuming it is — Assuming it is — Where does she address the perspectives, and why is that not pertinent? So, you know, I can't speak for her not addressing it, but there's nothing in the perspectives that speaks to whether it's a loan that is made under a program — in other words, the perspectives is for investors saying the loan itself is privately funded, that's undisputed, but nothing in there speaks to whether it's also part of a program, which is the standard — terms, doesn't it? I mean, what — I guess what I would say is that what the — you know, a 2014 prospectus for a 2008, I think, loan, like, it — there are various ways it wasn't relevant, and I think that the only thing directly — in the record, directly addressing what the program was here was the — or a couple of things. The declaration of the Navian employee. There was a statement of undisputed facts in which, you know, one of — fact 10 from Experian was that this is a loan made under such a program that, you know, is funded in whole or in part by a government unit or a nonprofit, and this is — two portions, at least relevant to this issue. One describes a private loan program, and then the other describes a government loan program, and those seem to be two separate programs. And I'm trying to find the specific page, but it's clearly defined. Right. No, I understand that, and that's in — you know, the word — the word program is not defined in the statute, and it can be obviously used. Is it whatever Navient says? Navient? It certainly is not whatever Navient says, but if you look at, for instance, the Ninth Circuit bankruptcy appellate panel decision in Pilcher, they say that — and which actually was also dealing with a situation where you had one set of loans that is government-funded, another that's purely privately funded, and they say that it has to be interpreted very broadly and inclusively. And even though, you know, it's not defined in the statute, I think the also — the In re Drum case that we cited from the bankruptcy court in Pennsylvania, the program there, again, is not named, but it basically — this is it, 329 bankruptcy reporter 35. They define the program there as basically being all of the lenders' loans, some of which were — this is — you know, the loans were made as part of New England's entire program, which included loans, some that were government-funded loans and some that were private loans. So, you know, I do think that there is — you know, but I guess that — This loan — you know, I like to say, Sally May was my best friend until it became my worst enemy. And I started to have to pay off these loans. But this loan is a private loan. And can you point us in the record to somewhere where there's any government funding of that loan or any not-for-profit funding of that loan? No, of course not, because the loan is not in any way funded by — and there's no contention that it is. And what is the broader program? What's the program? So, what — so the record does not reflect what the program is. The only thing in the record on what the — Is that a problem for you? It would be had the plaintiff sought discovery from Navient as to what the program was. They got an extension to seek it, but they didn't seek it. Had they sought leave to depose the declarant from Navient who said it was part of a program? Had they not answered the statement of undisputed facts, number 10 in the statement of undisputed facts? But you can't tell us right now what — I understand. Yeah. I understand what you're saying. But you cannot tell us right now what the program is. I can't. And I want to be perfectly honest. Like, it's murky here in the record, right? And — but based on the summary judgment record that Judge Spofield had, these were the only things that spoke to it. And in their statement of undisputed facts, they didn't dispute that it was part of such a program. In response to that, they just said, well, my loan was privately funded. But they didn't say the — it's not part of a program. This is — just so you have the site, it's at page A56. But, you know, all of this, I think, points up, you know, which is the second point that I was going to get to, which is that this whole mode of analysis is, frankly, crazy. It's basically — the position of the plaintiff here is that Experian, in a situation where the borrower does a modification and is paying the loan, doesn't dispute that it's owned by the lender, but the lender says it's owing, that Experian somehow is supposed to be responsible for getting its bankruptcy law experts on it, I guess? That's a reasonable — I'm sorry. That's a reasonable procedures argument, or is it an inaccuracy? It's both, Your Honor. But I think there are a lot of — You argue in the alternative to affirm based on reasonable procedures. Well, but also — Or that inaccuracy can't be a legal inaccuracy. But also — yeah. So it's both, though, because, you know, there are a number of circuits that have addressed it at this point, and we cite those in our briefs that have all said that this sort of dispute as to the validity of a loan is not an inaccuracy cognizable under the FCRA. And I think one of the cases that counsel was referring to illustrates very well why that has to be the case. This is the Turan case, where that's something where they actually sued Navient, the lender, as opposed to Experian, which is just purporting. Navient set summary judgment. And the bankruptcy court in that case ends up saying that — and this is — sorry, I'll give you the page. It's 638 Bankruptcy Reporter, and the case is at 620. I have a pincite here. But basically, what the Court says there is we can't grant summary judgment here because this really turns on — you know, Navient produced some documents that — for the formation of the loan program, but it's not clear whether there were more documents that were closer in time to the loan. This question is going to turn on the nature of the program as described by the documents. And so the notion that the credit reporting agency, even in a case if it followed the procedure available and disputed that this was a loan that was still valid and hadn't been discharged — and by the way, the discharge order, as you may know, says loans that are discharged will discharge, and specifically says student loans are a type of loan that normally are not discharged. But putting that aside, even if it had been disputed, it's not like Experian has Navient's or Sally May's program formation documents. You know, it's hard for us standing here today even to get our hands around what the program is. And, I mean, is Experian supposed to go to the bankruptcy court and file a, you know, a third-party adversary proceeding? There's just no way to do it. But if they have an order from the bankruptcy court that goes through the statutory analysis and concludes that it's dischargeable, then Experian has some obligations. Oh, 100 percent. And that's why it's a red herring to say that Experian does this all the time with other types of debts, because run-of-the-mill debts are, as a matter of course, discharged in a bankruptcy, and so those are treated as discharged. And how does, just as a matter of interest, how does a credit rating agency, as it should be noticed, find that out? So, for example, if there is a discharge of bankruptcy, how do you, not you, but how do you figure that out? So, there are, I mean, I believe, and obviously this is not from the record, but just my general understanding, they contract with vendors like LexisNexis who sweep the dockets, because they do report public records when they can get them. The vendors also are supposed to obviously report if something has been discharged from bankruptcy, but they sweep the dockets for bankruptcies. Ordinarily, something is going to be discharged if it's like a credit card debt or something. This is obviously in a different category, and it's actually not the case that Experian assumes that all student loans were not discharged. Experian doesn't make an assumption, but not in the absence of a bankruptcy court order, as with any other loan, when a reliable lender reports that something is owing and, you know, therefore, it's something that has survived bankruptcy, adds some information to the contrary or information that they're not reliable, then they will report that as an ongoing loan. So the reasonable procedures are just what you've been describing then, that you said that we could affirm the alternative and the reasonable procedures, which is rely on LexisNexis or whatever to sweep the dockets. Yeah. And you collect information and interpret. Is that right? Yes, Your Honor. And there are, I mean, I see my time is up, so I'm not going to go into great detail. But, yes, and there are circuit court cases that we've cited. There's a new one from the Eighth Circuit basically saying the same thing about a bankruptcy discharge, sort of a similar situation. But, yes, there is a failure by the plaintiff to carry the burden of showing an inaccuracy when the claimed inaccuracy, everything that counsel refers to here with the numbers, all rests on the claim that this is an invalid debt. And one ought to put Experian in the position of having to adjudicate that debt. Experian's also have the option of flagging something as uncertain. You know, rather than making the legal determination yourself or going to the bankruptcy court rather than have Solender go, couldn't you flag some ambiguity in the record? So there are two answers to that, I would say. One is that, you know, in this case there wouldn't have been anything to indicate uncertainty because, you know, it's a student loan, most student loans. They don't even know what school it's from. But most student loans are not discharged. The lender is reporting it as still ongoing. The guy is paying. In fact, it was to his benefit that the payments, ongoing payments, are reported until he stopped paying. So there isn't anything to signal uncertainty. But then there is a procedure in the FCRA not only for someone who thinks that there is an inaccuracy to dispute what's being reported, but also to put in a statement that the CRA would have to include if they don't like the way it's resolved and say, you know, my contention is that this was discharged in bankruptcy and is not owing. So it can be flagged that way as well. Maybe you can help me figure out this. So I think based on your argument, you're urging us to pursue two possible avenues. I count three, but okay. Well, I think you encountered turbulence on the first one. I'm not going to abandon Judge Schofield that easily. No, no, no, no, no. I appreciate where you are and what you're doing. Yes. But one is a factual inaccuracy versus a legal inaccuracy issue. And the other is a reasonable procedures approach. And those are two distinct analytical approaches. Totally distinct. Which is, in your view, the narrower approach in the context of this case? Yeah. I mean, to me the most, like the shortest line between the two points is that this is not a cognizable inaccuracy, that this is not the sort of thing that the FCRA, you know, contemplates credit reporting agencies resolving, that, you know, if you're disputing the validity of your debt and there isn't some court order that says it's discharged or whatever it is, you know, then that's just not an inaccuracy within the contemplation of the act. Of course, that's not something that we've ever had a published opinion. Right. There's an unpublished one affirming something on that basis, and there are a lot of other circuits that have done it, but that is correct. And that was why I answered your question the way I did, because, I mean, I think that that's sort of the logically prior question and the shortest and sort of the one that responds most clearly to the kind of what are we doing here aspect of this case. But I do think that, and I think that if the reasonable procedures is narrower in the sense that it depends more on the factual setting of the case. And I mean, I suppose then there's, if we go that route, the question is whether it has to go back. Right. And I don't think that it does, because I do think that there is, you know, obviously whether procedures are reasonable is something that in the majority of cases is going to be a question for a fact finder. But in a situation where you have something like this, where there is a, you know, you have a bankruptcy with no indication of anything to suggest that this student loan was discharged and like no sort of reason to inquire beyond. I mean, I understand they've suggested a lot of procedures that will tell you whether it's a Title IV institution or not. And none of that ultimately goes to whether, like what the nature of the overall program is, though. So none of those actually is a procedure that would answer it. So. Thank you. Thank you, Your Honor. We'll hear from the other side. Give you a little time. Thank you. We would urge the Court not to. You reserve three minutes. I have three minutes for both, yeah. Thank you very much. We would urge the Court not to get to either of the FCRA issues, the reasonableness or this legal-slash-factual thing, because it wasn't addressed below at all. In fact, the only place it was addressed below was in the motion to dismiss, where Judge Schofield disagreed with those positions. But also, I don't think that this legal. Excuse me. As to reasonable procedures, so is your view that, you know, apart from the general preference to have the district court make a determination like that in the first instance, is the record insufficient in some way? It is insufficient because there's not anything in this record about their detailed or procedures. Their processes. Their processes. I mean, reasonable procedure requires a balancing of whether there's a possibility of inaccuracies versus the burden of trying to prevent those. That's not true. That's not the case with respect to the factual inaccuracy versus legal inaccuracy issue. Correct. And I was going to get to that, which is. Could I just interject for a minute? I thought there was some evidence, including that you charged that Mr. Zmetro, that there were inconsistencies in the description of what the agency had, in fact, done. I believe the only thing. Well, Mr. Zmetro is at NABINT, but we submitted a declaration or a deposition from their expert that said that they have no procedures at all for student loans. So the only thing we believe that's in the record as to that issue is as to student loans. I mean, no procedures to make a legal determination, but they. The fact was that the student loan and the currency of the debt was available to them on the record, and they followed their usual procedures to ascertain that. Correct. And we say that those procedures are insufficient. They're unreasonable, those procedures, because those procedures treat every single student loan. Well, then we get to the legal factual. Okay. Yes. And I don't think it's. I don't think you can draw that distinct. I don't think this Court on this record can draw that distinction as clearly as being discussed here. I mean. You mean the factual legal. Yes. That the factual legal distinction is one that this Court could say what's happening here is purely legal, and that's not. They have no burden to deal with that as a credit reporting agency. And what we suggested in our reply brief is I listed a litany of types of coding and determinations and procedures that they have, that they do every day. One I mentioned before, which is the credit cards, which he admits they treat every credit card as discharged. Isn't that presumptively reasonable? I mean, credit card debt is typically, that's the kind of prototypical kind of debt that is discharged, whereas everyone knows there's a lot of ambiguity in the student debt situation, and it's kind of presumptively not discharged. Why isn't that quite a distinguishable circumstance? Because the, this Court said last year that not all student loans are discharged, but even the discharge order itself says not all student loans are discharged. That, by definition, means some are. They treat 100 percent of them as not. That is what we say is unreasonable. You can't. So what would be wrong, would this record support, I gather you might disagree with us, but tell me what the record would support, if there's sufficient legal uncertainty here that it would require Experian to act essentially as a legal tribunal, that reasonable procedures don't require them to do that? I would say that that's not the way that they've behaved in the past. It's not the obligations that they have. And we've pointed to in our reply brief at page 18 and 19 a list of all types of things. I mean, they have determination to determine whether debt has been reaffirmed in bankruptcy. That's one of their obligations. That's one of the things that they do. That's cited in our reply brief at page 19. They do coding to figure out whether a loan was forgiven under a teacher's forgiveness program. They determine whether a borrower is of legal age to make a contract. I mean, they do all of these things, which I think this Court could say, well, it sounds kind of legal in that. So I don't think the distinction is as clear. It seems like you can plug in a bunch of factors there and come to a conclusion, whereas here you have to interpret any program. You have to assess what is a program. Well, what we submitted in the record is that the only thing you have to determine is whether it's a Title IV loan. And they already have coding for that. They have coding for whether it's a Federal loan. They already have coding for that. That's in our reply brief also at page 17 to 20. They already have coding of whether it's a Federal loan or not. Their expert admitted that. We submitted that in the record. They already have coding of whether it is a Title IV school or not. They already have that. They already require that from the lenders. So they already have that procedure. They already have that determination built into the types of processes that they do. That's why I say you can't just say, oh, that's a legal determination. They already ask for those factors. Now, Your Honor mentioned to my opposing counsel, isn't there something that should indicate it? Well, yes, that's exactly right. But in this case, when there's a student loan, you cannot treat 100 percent of them as discharged when a discharge comes out. They can't do it that way. Neither can Navient. Neither can anyone. But that's what's been happening here. We've identified an issue that people have not been doing properly. And that's just because it has some aspect to it that comes out of the bankruptcy court we don't think gives them a free pass. They're treating 100 percent, every single student loan at the date of discharge as discharged. My counsel talks about whether the loan was paid afterwards. As not discharged. As not discharged. Excuse me. I've been getting confused. I apologize. You confused me there a couple times. He keeps pointing to things that happened later on. We deposed people from them. They don't look at that. He's coming up here and saying, well, we're going to depose them here. You're saying that Mr. Mader paid on this loan. Did you look at that when you determined whether his loan was discharged or not? No. They said no. We don't look at that. So they're trying to use post hoc justifications for the decision that they made at the time of discharge, which is where we started this discussion. But I just want to clear up one or two things. They point to the Pilcher case. The Pilcher case is not controlling here because it had a specific organizing document about the program. The Drum case, you know, I don't know why he quotes it that way because he leaves out the exact line right afterwards that says the parties stipulated that there was a Federal program involved. They also, below and here, they keep saying we didn't submit any evidence. Obviously, Your Honor saw that we submitted the prospectus. But we even said in our statement of disputed facts, number 7, okay, not number 10 that disputes the fact that this was a Federal program and it points to the prospectus which was attached to my declaration. I mean, this is really, you know, I went through the looking glass and I've been talking to Humpty Dumpty and he says words are whatever he says they are. Now, they scour, lastly, they scour Pacer every single day to try to pick up which debts have been discharged and other kinds of court's orders. They make these millions of these determinations. These same determinations which, you know, are pseudo-legal but have a legal aspect of it, they make them every single day. And I urge this Court not to find on this record that they get a pass on that basis. So, you know, I'll leave it at that, although I should clarify one thing. I graduated so long ago that Sally May was a government entity and Nellie May was a nonprofit, but thank you both. We'll reserve the decision. And is Mr. Shah on the audio? Thank you, Your Honors. Thank you very much.